UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TOMERY DARLING AND ANA JARA,**<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>**DIGNITY HEALTH, DIGNITY COMMUNITY CARE, AND DIGNITY HEATH MEDICAL GROUP NEVADA LLC,**<br><br>　　　　Defendants. | Case No.: 4:21-CV-2453-YGR<br><br>**ORDER GRANTING MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION AS TO DEFENDANTS DIGNITY HEALTH AND DHMGN**<br><br>Re: Dkt. No. 42 |

Plaintiffs Tomery Darling and Ana Jara filed this putative collective and class action against defendants Dignity Health, Dignity Community Care ("DCC"), and Dignity Health Medical Group Nevada LLC ("DHMGN"), asserting wage-and-hour violations under federal, California, and Nevada law. Plaintiffs allege that the defendant healthcare providers systematically failed to compensate their employees for off-the-clock work charting patient notes. Plaintiff Ana Jara now moves for conditional certification of a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 201, *et seq*.

Having carefully considered the papers submitted in support and in opposition, the pleadings in this action, and the admissible evidence, and for the reasons set forth below, the Court **GRANTS** the motion for conditional certification of an FLSA collective action as against defendants Dignity Health and DHMGN only, and **APPROVES** the revised proposed form of collective notice for distribution.

**I.　BACKGROUND**

Plaintiffs' Second Amended Complaint (Dkt. No. 32, "SAC") alleges six causes of action against all three defendants. Plaintiff Darling alleges a claim for violation of California's Unfair

Competition Law ("UCL"), Cal. Business & Professions Code section 17200 (Second Cause of Action), based on predicate violations of several provisions of the California Labor Code. Plaintiff Jara alleges claims for failure to pay overtime in violation of the FLSA (First Cause of Action) and claims under Nevada law for failure to pay minimum wage, failure to pay overtime, interrupted meal breaks, and untimely payment upon termination (Third, Fourth, Fifth and Sixth Causes of Action). Only Jara's claim under the FLSA, on behalf of herself and the members of the "FLSA Class" (or, more accurately, "Collective Action") alleged in the SAC, is at issue in the instant motion for conditional certification.

Jara alleges that she was employed as an hourly, nonexempt medical assistant as an outpatient clinic in Las Vegas, Nevada, from November 2013 to December 3, 2019. (*Id.* ¶ 11.)[1] Jara was scheduled for and regularly worked 80 hours per two-week pay period. (*Id*. ¶¶ 11, 19.) She also regularly worked additional hours beyond those for which she was scheduled, which went unrecorded and unpaid. (*Id.*) As part of her job duties, Jara and other plaintiffs employed by defendants would record and document any and all patient care notes into the electronic medical record ("EMR") keeping software called Cerner. (*Id*. ¶ 13; Declaration of Joshua Buck in Support of Motion ("Buck Decl."), Dkt. No 42-1, ¶¶ 5–6, Ex. 3 (Dignity Health's Responses to First Set of Interrogatories at 5–6) and Ex. 4 (DHMGN's Responses to First Set of Interrogatories at 5–6).) Plaintiffs allege that documentation of patient care notes, known as "charting," is an "integral, indispensable and legally necessary" task of the healthcare jobs in which they were employed, both for patient care and medical billing. (SAC ¶ 14.) Defendants required plaintiffs and other similarly situated employees to do their charting while at their place of employment. (*Id.*) The Cerner system records a time and date stamp for all entries into the system. (Declaration of Brian Thao-Houane in Support of Motion, Dkt. No. 42-2, at ¶ 9.) Plaintiff further asserts that defendants required all hourly paid employees to record their hours worked by clocking in and out of a separate electronic

---

[1] Jara alleges that she was employed by "Defendants" in the SAC. (SAC ¶ 11.) The SAC names three defendants: Dignity Health, DCC, and DHMGN. (*Id.* ¶ 6.) Defendants' answer denies that Dignity Health or DCC employed Jara, asserting that only DHMGN was her employer. (Dkt. No. 33 at ¶¶ 5, 9.) This discrepancy has no bearing on conditional certification of an FLSA collective action since the opt-in plaintiffs who have filed consents include persons who aver they were employed by Dignity Health, which defendants do not contest for purposes of this motion.

timekeeping system called Teams. (SAC ¶ 16; *see also* Buck Decl. ¶¶ 5–6, Ex. 3 (Dignity Health's Responses to First Set of Interrogatories at 5–6) and Ex. 4 (DHMGN's Responses to First Set of Interrogatories at 5–6).)

Plaintiffs allege that defendants "systematically understaffed" their facilities such that plaintiffs and similarly situated employees were required to input patient care information in the Cerner system by working before the start of their shift, during their meal breaks, or after their scheduled shift, *i.e.*, "off-the-clock." (SAC ¶ 12.)[2] They allege that defendants and their agents were aware that plaintiffs were working without compensation since they were required to be physically present at defendants' facilities in order to enter patient care notes, and the Cerner system recorded the times that plaintiffs made their charting entries. (*Id.* ¶ 15.) They further allege that defendants' agents would routinely observe plaintiffs and similarly situated employees making their EMR entries "off-the-clock," and defendants were informed that patient care employees routinely completed EMR charting during time periods for which they were not compensated. (*Id.*)

Based on these allegations and the evidence submitted with plaintiffs' motion, Jara seeks conditional certification of the following FLSA collective action:

> All nonexempt hourly paid patient care employees who made entries in the electronic medical record (EMR) system but who were not clocked into the timekeeping system and who were employed by [d]efendants in the United States at any time during the relevant time period alleged herein.

(Mtn. at 3:1–3.)[3] She also seeks approval to circulate the proposed notice and consent form to potential plaintiffs in this collective action. (*Id.*, Ex. A (Proposed Notice) and Ex. B (Proposed

---

[2] In their motion, plaintiffs submit defendants' overtime policy requiring management preapproval for any overtime. (Buck Decl., Ex. 5 (Dignity Health Overtime Policy).) Plaintiffs argue that this policy discouraged employees from reporting off-the-clock, overtime hours. While the policy is not alleged in the SAC, defendants do not dispute that Dignity Health and DHMGN both require preapproval of overtime. (Declaration of Wylie Evans in Support of Opposition, Dkt. No. 45-5, ¶ 6; Declaration of Chantel Walker in Support of Opposition, Dkt. No. 45-1, ¶ 5.)

[3] The Court notes that the definition of the collective action (which plaintiffs refer to as the "FLSA Class") as stated in the motion papers differs slightly from the definition alleged in the SAC:

> All nonexempt hourly paid employees employed by [d]efendants within the United States who worked off the clock as demonstrated by the comparison

3

Consent to Join).) Following the July 13, 2021 hearing, the parties submitted a revised proposed notice to the Court. (Ex. 1 to this Order.) The revised proposed notice asserts that the collective action includes all those who meet the definition from August 27, 2017, to the present.

Since this case was first filed on August 27, 2020, eight individuals have opted into the collective action.[4] Each of the opt-in plaintiffs joins Jara in the instant motion. The opt-in plaintiffs have submitted declarations attesting that they were required to clock in and out of the timekeeping system by swiping their badges at the scheduled start and end of their shifts, but would be required to complete their charting work when clocked out of the timekeeping system, or during times when they were supposed to receive a meal break, "in order to meet patient metrics." (Raines Decl. ¶ 7; *see also* Hussel Decl. ¶ 7; Tibbs Decl. ¶¶ 6, 8; Knoll Decl. ¶¶ 6, 8; Ayers Dec. ¶¶ 6, 8; O'Donnell Decl. ¶¶ 6, 8; Ostroskie Decl. ¶¶ 6, 8; Sterchi Decl. ¶¶ 6, 9.)

---

between the EMR system and electronic timekeeping system at any time during the relevant time period alleged herein.

(SAC ¶ 22.)

[4] Plaintiffs who have submitted consents to opt-in to the litigation thus far include: (1) Yolanda Raines, former clinical lab assistant at Dignity Health's Siena Campus in Henderson, Nevada (Declaration of Yolanda Raines in Support of Motion ("Raines Decl."), Dkt. No. 42-4, ¶¶ 3–4); (2) Natalie Hussel, former medical assistant at DHMGN's Tivoli Village and Peccole Plaza facilities in Las Vegas, Nevada (Declaration of Natalie Hussel in Support of Motion ("Hussel Decl."), Dkt. No. 42-5, ¶¶ 3–5); (3) Gina Tibbs, current registered nurse at Dignity Health's Mercy Hospital of Folsom, California (Declaration of Gina Tibbs in Support of Motion ("Tibbs Decl."), Dkt. No. 42-6, ¶¶ 3–4); (4) Rebecca Knoll, current registered nurse at Dignity Health's Mercy San Juan Medical Center in Carmichael, California, and former registered nurse at Dignity Health's St. Joseph Medical Center in Phoenix, Arizona (Declaration of Rebecca Knoll in Support of Motion ("Knoll Decl."), Dkt. No. 42-7, ¶¶ 3–4); (5) Lisa Ayers, former registered nurse at Dignity Health's Mercy General Hospital of Sacramento, California (Declaration of Lisa Ayers in Support of Motion ("Ayers Decl."), Dkt. No. 42-8, ¶¶ 3–4); (6) Wendy O'Donnell, current registered nurse at Dignity Health's Mercy Hospital of Folsom (Declaration of Wendy O'Donnell in Support of Motion ("O'Donnell Decl."), Dkt. No. 42-9, ¶¶ 3–4); (7) Krista Ostroskie, former certified medical assistant at Dignity Health Medical Group – Dominican in Santa Cruz, California (Declaration of Krista Ostroskie in Support of Motion ("Ostroskie Decl."), Dkt. No. 42-10, ¶¶ 3–4); and (8) Gina Sterchi, current registered nurse at Dignity Health's Mercy Hospital of Folsom, California (Declaration of Gina Sterchi in Support of Motion ("Sterchi Decl."), Dkt. No. 42-11, ¶¶ 3–4).

## II.  LEGAL FRAMEWORK

Under the FLSA, employees may bring a collective action on behalf of themselves and other "similarly situated" employees.  29 U.S.C. § 216(b).  Unlike class actions brought under Rule 23 of the Federal Rules of Civil Procedure, collective actions brought under the FLSA require that individual members "opt in" by filing a written consent.  29 U.S.C.A. § 216(b) (no employee shall be a "party plaintiff" unless they give their consent in a writing filed with the court).  Thus, under the FLSA, "workers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018).  "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117.

In *Campbell*, the Ninth Circuit explained that FLSA collective actions proceed under a two-stage certification process. *Id.* at 1108.  First, a plaintiff moves for conditional certification at some point during the pleading stage. *Id.* at 1109.  "'The sole consequence' of a successful motion for preliminary certification is 'the sending of court-approved written notice' to workers who may wish to join the litigation as individuals." *Id.* at 1101 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)).  At this notice stage, FLSA plaintiffs are not held to the "stricter standard" applied at the second, post-discovery stage, "[a]t [which] point, the district court has a much thicker record[.]" *Campbell*, 903 F.3d at 1117.[5]  At the first stage, "[t]he district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited

---

[5] "Assuming the collective action has survived its earlier scrutiny, the second stage will come at or after the close of relevant discovery." *Campbell*, 903 F.3d at 1109.  At that point, the defendant can "move for 'decertification' of the collective action for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point." *Id.; see also Rivera v. Saul Chevrolet, Inc.*, No. 16-CV-5966 (LHK), 2017 WL 3267540, at *3 (N.D. Cal. July 31, 2017) ("It is at this second stage that the Court makes a factual determination about whether the opt-in plaintiffs are actually similarly situated . . . .").  "The district court will then take a more exacting look at the plaintiffs' allegations and the record evidence" utilizing a stricter standard akin to summary judgment. *Campbell*, 903 F.3d at 1109.  If the collective action survives the decertification motion, it "proceeds toward trial, at least on the questions justifying collective treatment." *Id.* at 1110.

other evidence." *Id*. The level of consideration is "lenient" and "loosely akin to a plausibility standard." *Id*.[6]

At this first stage, the Court's sole concern is whether it can make "a preliminary determination that the collective as defined in the complaint satisfies the 'similarly situated' requirement." *Campbell*, 903 F.3d at 1109. As the Ninth Circuit explained, "similarly situated" means "plaintiffs must be alike with regard to some *material* aspect of their litigation." *Id.* at 1114 (emphasis in original). "[W]hat matters is not just any similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution." *Id.* at 1115. "If the party plaintiffs' factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Id.* at 1114.

### III. ANALYSIS

In seeking conditional certification under FLSA, Jara contends that she and the current opt-in plaintiffs shared similar working conditions with potential opt-in plaintiffs, creating common issues of fact and law as to defendants' FLSA liability. Members of the proposed collective action are all non-exempt, hourly-paid patient care employees who were required to enter patient care notes into the Cerner EMR system. Plaintiffs assert that, due to defendants' inadequate staffing levels and restrictive overtime pre-approval policy, all members of the collective action were required to enter some of their patient care notes in the system during their unpaid, off-the-clock time. Further, proof of unpaid work time can be established for all members of the collective by comparison of their Cerner EMR charting entries and their Teams timekeeping entries to reveal times they were charting off-the-clock.

Defendants primarily argue against conditional certification on the grounds that (1) plaintiffs fail to show a common policy, plan, or practice instructing employees not to report their overtime

---

[6] District courts have noted that the standard articulated in *Campbell* "requires a much lower showing than the [ ] approach district courts previously employed." *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-CV-04456 (PJH), 2018 WL 6727825, at *6 (N.D. Cal. Dec. 21, 2018). Thus, decisions prior to *Campbell* on this point are of questionable continuing authority.

hours, and (2) plaintiffs cannot establish knowledge of the alleged off-the-clock work by referring to the Cerner records. Neither argument persuades.

As an initial matter, defendants appear to urge the Court to apply an improperly heightened standard to the first-stage inquiry. (Opp. at 17–18 ("There is no evidence that Plaintiffs were actually instructed to work off the clock by anyone and if so, by whom. There is similarly no evidence of a written policy or memo forbidding overtime or encouraging off-the-clock work."); ("Liability for unpaid overtime is established if an employer knew or *should* have known of the off-the-clock work. It is not proven through evidence that the employer *could* have known that such work was being performed.") (italics in original; emphasis supplied as underlined).) As noted above, the Ninth Circuit explained that, at this notice stage, FLSA plaintiffs are not held to the "stricter standard" applied at the post-discovery decertification stage, "[a]t [which] point, the district court has a much thicker record[.]" *Campbell*, 903 F.3d at 1117. In that particular case, "roughly 2,500 policy officers opted into two collective actions alleging a pervasive, unwritten policy discoursing the reporting of overtime." *Id.* at 1099. The Ninth Circuit recognized that these allegations "provide[d] a basis for collective treatment, as they raise a similarity of fact or law whose disposition would advantage the litigation of [their] FLSA claims." *Id.* at 1119. Accordingly, defendants' arguments regarding the sufficiency of plaintiffs' evidence do not persuade. *See*, *e.g.*, *Dudley v. TrueCoverage LLC*, No. 18-CV-3760 (PA), 2018 WL 6431869, at *2 (C.D. Cal. Sept. 28, 2018) ("[C]onditional certification is by no means automatic, but [p]laintiffs' burden is light.") (internal quotation marks and citation omitted).

Turning to the substance of defendants' arguments, the first contention that plaintiffs cannot show that employees were "actually instructed to work off the clock by anyone," or that defendants had a "written policy or memo forbidding overtime or encouraging off-the-clock work," mischaracterizes plaintiffs' theory of liability. (Opp. at 16–17.) Plaintiffs assert that *understaffing*, combined with restrictive overtime policies, resulted in off-the-clock work. (Mtn. ¶ 17 ("As a result of this tension from Defendants' overtime policy and the lack of sufficient staffing, Plaintiff and Opt-In Plaintiffs interacted with Cerner off-the-clock.").) "Evidence of understaffing across a collective of employees can support conditional certification of a claim for uncompensated off-the-clock work." *Alvarez v. BI Inc.*, No. 16-CV-2705 (MSG), 2018 WL 2288286, at *6 (E.D. Pa. May

17, 2018) (citing cases); *see, e.g.*, *Spencer v. Macado's, Inc.*, No. 18-CV-5 (NKM), 2019 WL 4739691, at *1 (W.D. Va. Sept. 27, 2019) (granting conditional certification where "[p]laintiffs allege that [defendant's] maintained a policy of staffing restaurants with fewer employees than necessary"); *Turner v. Chipotle Mexican Grill, Inc.*, 123 F. Supp. 3d 1300, 1303 (D. Colo. 2015) (granting conditional certification where plaintiffs alleged that "Chipotle implement[ed a] policy through 'centralized, company-wide labor or payroll budgets that . . . incentivize[d] managers to understaff restaurants,' as well as through 'timekeeping devices that automatically punch employees off the clock, even if they are still working'"). Defendants' reliance on cases denying collective certification but which do not involve this alleged practice are therefore distinguishable. (Opp. 14–17 (citing *Brickley v. Dolgencorp., Inc.*, 272 F.R.D. 344, 345 (W.D.N.Y. 2011) (practice of allocating payroll hours to each store); *Velasquez v. HSBC Finance Corp.*, 266 F.R.D. 424, 432 (N.D. Cal. 2010) (sales target and management incentives); *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07-CV-7350 (BSJ), 2009 WL 7311383, at *3 (S.D.N.Y. Nov. 13, 2009) (rewarding sales with bonus pay); *Bentley v. County of Los Angeles*, No.09-CV-2063 (RGK), 2009 WL 10674394 (C.D. Cal. Sept. 15, 2009) (practice of verbally denying overtime requests)).)[7]

Second, defendants would have the Court believe that plaintiffs are relying solely on the Cerner records to demonstrate defendants' knowledge of their alleged off-the-clock work, arguing that these records, by themselves, are insufficient to establish knowledge. However, plaintiffs also allege that defendants' agents would "routinely observe" the employees entering their charting notes during lunch breaks and before and after shift. This is plausible in light of the further allegation that

---

[7] Moreover, defendants misstate the FLSA standard for employer liability which requires neither express direction to work off-the-clock nor policies of the type argued. The FLSA requires employers to compensate employees for all hours they were "suffered or permitted" to work. *See Alvarez v. IBP, Inc.,* 339 F.3d 894, 902 (9th Cir. 2003) (*citing* 29 U.S.C. §§ 206, 207; additional citation omitted); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) ("employ" includes suffer or permit to work with the employer's knowledge (citing 29 U.S.C. §§ 203(g), 207)). Employers may be charged with knowledge, and liable for payment for off-the-clock work, even when they have promulgated rules *against* working off-the-clock or instructed employees they should not work off-the-clock. *See Reich v. Dep't of Conservation & Nat. Res., State of Ala.*, 28 F.3d 1076, 1082-83 (11th Cir. 1994) (the question is whether, under the circumstances, employer had knowledge of off-the-clock work or opportunity to acquire such knowledge through reasonable diligence).

employees were required to enter their charting notes while on the premises, which defendants admit in their answer.  (Dkt. No. 33, ¶ 14 ("Defendants admit some employees are responsible for entering patient care notes in electronical medical recordkeeping software while at Defendants' facility.").)  Further, plaintiffs allege that "[u]pon information and belief, [d]efendants were repeatedly informed, and it was generally common knowledge, the patient care employees would routinely enter patient care data" during times for which they were not compensated.  (SAC ¶ 15.)[8]

In any event, the only question at this juncture is whether plaintiffs have plausibly alleged similar issues of law or fact which are material to the disposition of their FLSA claims.  The Court finds that they have.  Plaintiffs allege that defendants required completion of contemporaneous charting through the Cerner system even as they understaffed their clinics.  Plaintiffs also point to defendants' policies requiring pre-authorization of overtime.  In addition, plaintiffs allege that defendants knew that employees were working without compensation because they were required to make entries into Cerner while at defendants' facilities where they were observed doing so by defendants' agents and because Cerner recorded the time when employees made entries.  Plaintiffs further offer evidence that defendants' timekeeping policy required supervisors and managers to

---

[8] Further, defendants' contention that "courts have consistently rejected" use of nonpayroll records or data as a means to show an employer's knowledge of off-the-clock work does not accurately reflect the decisions cited, which considered multiple factors bearing on the employer's knowledge after full development of a record at trial or summary judgment.  (Opp. at 18–19 (citing *Hertz v. Woodbury County*, 566 F.3d 775, 781–82 (8th Cir. 2009) (review of jury verdict in favor of employer); *Allen v. City of Chicago*, 865 F.3d 936, 943 (7th Cir. 2017) (review of bench trial and judgment in employer's favor); *Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995) (same); *Jong v. Kaiser Found. Health Plan, Inc.*, 226 Cal. App. 4th 391, 39–99 (2014) (review of summary judgment in favor of employer); *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) (same); *Davis v. Zurich Am. Ins. Co.*, No. 19-CV-04397 (WHO), 2021 WL 369538, at *17 (N.D. Cal. Feb. 3, 2021) (granting summary judgment employer based on active misrepresentation of overtime and "inconclusive" audit data)).)  None of those decisions determined the employer's knowledge based solely on whether a records audit could support a finding of constructive knowledge.  Indeed, the Eighth Circuit's decision in *Hertz* specifically stated "[w]e do not foreclose the possibility that another case may lend itself to a finding that access to records would provide constructive knowledge of unpaid overtime work." *Hertz*, 566 F.3d at 781–82.

review employee timecards "to ensure all pay is accurate and complete." (Buck Dec. at ¶ 8, Ex. 6 (Dignity Health's Team Time & Attendance Guidelines) at p. 3.)[9]

Based on the foregoing, plaintiffs have sufficiently established that the members of the FLSA collective are "alike in ways that matter to the disposition of their FLSA claims." *Campbell*, 903 F.3d. at 1114. Whether plaintiffs' contentions regarding defendants' actual or constructive knowledge of the collective members' unpaid work will be "borne out by [a] fully developed record" remains to be determined in later proceedings. *Id.* at 1100.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** conditional certification of a collective action on the FLSA claim against defendants Dignity Health and DHMGN and **APPROVES** the attached collective action notice.[10]

This terminates Docket No. 42.

**IT IS SO ORDERED.**

Date: July 20, 2021

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

---

[9] In addition, plaintiffs note on reply that the filing of a putative wage and hour class action in the California superior court in 2018 (*Allison v. Dignity Health*, San Francisco County Superior Court Case No. CGC 18-566922), which asserted off-the-clock claims based on the same factual predicate as alleged here, put defendants on notice of that unpaid charting work was occurring for at least the time period following the service of the *Allison* complaint.

[10] Defendants argue that conditional certification should be denied as to defendant DCC since no plaintiff has shown they were employed by DCC. The Court agrees that neither the named or opt-in plaintiffs have offered evidence that they are or were employed by DCC. Moreover, the operative complaint and instant motion make no specific allegations against DCC at all, and plaintiffs do not attempt to address this deficiency in their reply papers. For these reasons, the Court **DENIES** the motion for conditional certification as to DCC *only*.